932 F.2d 967
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
ALLSTATE INSURANCE COMPANY, Plaintiff-Appellee,
v.
JAMES G. HOLT, Defendant, THERESA ZUREK, Defendant-Appellant.
 No. 90-1473.
 United States Court of Appeals, Sixth Circuit.
 April 25, 1991.
 
 On Appeal from the United States District Court for the Eastern District of Michigan, No. 89-60074; La Plata, J.
 E.D.Mich.
 AFFIRMED.
 Before BOYCE F. MARTIN, JR. and DAVID A. NELSON, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant Theresa Zurek was divorced from her husband of many years, Leo Zurek, in November of 1978. Defendant James G. Holt was divorced from his first wife at about the same time. Mrs. Zurek and Mr. Holt became intimates in the spring of 1979. Mr. Holt married another woman in October of that year, but resumed his attentions to Mrs. Zurek a few months later.
 
 
 2
 While still married to his second wife, Mr. Holt invited Mrs. Zurek to go fishing with him on the 1980 Memorial Day weekend. One thing led to another, and Mr. Holt maintained an adulterous relationship with Mrs. Zurek for the next eight years. They met about once a week, on average.
 
 
 3
 Throughout his life Mr. Holt has suffered from cold sores on his mouth. The lesions are only intermittently active; when they are active, however, they are contagious. Mr. Holt has known from childhood that the sores are contagious in their active phase, and he therefore took pains to avoid kissing Mrs. Zurek on the mouth when the sores were present. Fortunately, perhaps, mouth-to-mouth contact was not a concomitant of what Mr. Holt testified was his "favorite way" of taking his pleasure with Mrs. Zurek. Unfortunately, however, Mrs. Zurek contracted genital herpes. Mr. Holt does not deny that she caught it from him.
 
 
 4
 In 1988, three years after she came down with the disease, Mrs. Zurek brought a damage action against Mr. Holt in a state court. Mr. Holt tendered the defense of the case to Allstate Insurance Company, the plaintiff herein. (Allstate had written a homeowners insurance policy for Mr. Holt in connection with his purchase of a house in 1982.) After agreeing to provide a defense under a reservation of rights, Allstate brought the present diversity action against Mr. Holt and Mrs. Zurek in the United States District Court for the Eastern District of Michigan. The insurance company sought a declaratory judgment to the effect that Mrs. Zurek's claim was not covered under the homeowners policy because of a policy provision excluding coverage for damages that might reasonably be expected to result from "intentional or criminal acts" on the part of the insured.[1]
 
 
 5
 After taking depositions from both defendants, Allstate moved for summary judgment. Mrs. Zurek filed a cross-motion for summary judgment. The district court (LaPlata, J.) granted Allstate's motion and denied Mrs. Zurek's. Mrs. Zurek subsequently perfected the appeal that is before us now, and for the reasons that follow, we affirm.
 
 
 6
 * Under the heading "EXCLUSIONS--LOSSES WE DO NOT COVER," Allstate's homeowners' policy contains an "intentional act" exclusion that reads as follows:
 
 
 7
 "1. We do not cover any bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which is in fact intended by an insured person."
 
 
 8
 The district court concluded in this case that because an insured person transmitted the disease in question by "intentional" acts from which bodily injury might "reasonably be expected to result," coverage is ruled out under the plain language of the policy.[2] The district court's reading of the policy finds strong support in Allstate Ins. Co. v. Freeman, 432 Mich. 656, 443 N.W.2d 734, reh'g denied and amended, 433 Mich. 1202, 446 N.W.2d 291 (1989).
 
 
 9
 Alonda Freeman, one of the insured persons in that case, fired a handgun at a neighbor during an argument. The neighbor was hit in the shoulder. Mrs. Freeman stated that she did not intend to cause any injury, but she was convicted of "discharging a firearm intentionally, aiming without malice and with injury." 432 Mich. at 683, 443 N.W.2d at 747. The Michigan Supreme Court held that because of the "intentional act" exclusion in the Allstate policy, the insurance company was not obligated to indemnify Mrs. Freeman and her husband with respect to tort claims asserted by the injured neighbor.
 
 
 10
 "Applying the exclusionary language that we find unambiguous to the facts in this case," the Supreme Court said, "we are persuaded ... that Alonda Freeman's conduct satisfies the first element of the exclusionary language as either an intentional or criminal act." 432 Mich. at 686, 443 N.W.2d at 748. The Supreme Court then rejected an argument that the exclusion did not apply because Mrs. Freeman did not have a subjective intent to injure the neighbor. Although the Supreme Court noted that Allstate's policy does exclude coverage for bodily injury "which is in fact intended by an insured person"--language that requires application of a subjective standard--the Court held that the policy "requires application of an objective standard of expectation" insofar as it excludes coverage for bodily injury "which may reasonably be expected to result from [an insured's] intentional or criminal acts...." 432 Mich. at 688, 443 N.W.2d at 749. Under the objective standard prescribed by the language last quoted, "[a]n insurer may obviate its duty to defend and indemnify under the exclusion ... if the resulting injury was the natural, foreseeable, expected, and anticipated result of the intentional or criminal conduct." 432 Mich. at 687-88, 443 N.W.2d at 749.
 
 
 11
 Echoing the type of argument advanced unsuccessfully by Mrs. Freeman, and pointing to testimony in which Mr. Holt said he considered Mrs. Zurek his "best friend," as well as "a great sex partner" and "a great fishing partner," Mrs. Zurek argues that Mr. Holt did not "deliberately and intentionally set out to give Theresa Zurek the herpes she now has." This argument ignores the fact that whether Mrs. Zurek's genital herpes could "reasonably [have been] expected to result from [Mr. Holt's] intentional or criminal acts" must be determined under "an objective standard of expectation," not a subjective standard.
 
 
 12
 Under an objective standard, the consequences of the couple's preferred form of sexual activity (conduct in which they engaged "[e]very time we met," according to Mr. Holt) could hardly have been unexpected. We live, for better or worse, in what passes as an age of sexual enlightenment. In such an age, someone like Mr. Holt can reasonably be expected to be aware--as Mr. Holt conceded, in testimony we quote below, he was in fact aware--that the disease with which we are concerned here is transmitted sexually.
 
 
 13
 Mrs. Zurek has invited our attention to the following passage from Mr. Holt's deposition:
 
 
 14
 "Q. Were you aware prior to June of 1985 that when your cold sore is active, when it's present, that if you engage in oral sex with another person that you could give them that, they could contract that disease on their genital area?
 
 
 15
 A. Yes, I was.
 
 
 16
 Q. Did you engage in oral sex with Ms. Zurek during the time that you had active cold sores?
 
 
 17
 A. When someone puts their body right in front of you, in the heat of passion and lust, sometimes you can resist and sometimes you cannot.
 
 
 18
 Q. So, in other words, the answer is yes?
 
 A. That's correct." (Emphasis supplied.)
 
 19
 Relying on the testimony just quoted, Mrs. Zurek argues that Mr. Holt's conduct was "seemingly uncontrollable"--that there was an "almost involuntary submission to the passion of a moment of sexual frenzy." But Mrs. Zurek's argument is no more persuasive than Mrs. Freeman's would have been if Mrs. Freeman had argued that she shot her neighbor in a moment of seemingly uncontrollable rage. It can make no difference, of course, that Mr. Holt's intentional or criminal acts stemmed from lust, not anger.
 
 
 20
 Mr. Holt knew exactly what he was doing, just as Mrs. Freeman did--and from an objective standpoint, the consequence of Mr. Holt's conduct could no more have been unexpected than the consequence of Mrs. Freeman's conduct was. A bullet wound is the natural, foreseeable, expected and anticipated result of firing a gun at someone--and if Mrs. Freeman allowed her wrath to overcome her reason, that has nothing to do with the question whether the injury could "reasonably be expected to result" from her intentional or criminal act. Transmission of disease, similarly, is the natural, foreseeable, expected and anticipated result of the acts in which Mr. Holt indulged when his lesions were contagious--and if he let his lips be guided by his libido, that has nothing to do with the question whether injury might reasonably be expected to result from his intentional or criminal acts. It simply does not matter that Mr. Holt had no desire for the entelechial end produced by his capitulation to desire for the corporeal end. What matters, under the unambiguous language of the policy, is whether the entelechial end could reasonably be expected to result from the intentional acts.
 
 
 21
 Mrs. Zurek goes on to argue that Mr. Holt's cold sores were, for him, only a minor irritation, and "[a]t no time did he experience or think he had or could convey the permanent, painful, constantly recurring genital herpes which now afflict[s] Mrs. Zurek...." But when dealing with liability insurance policy exclusions for bodily injury that is "expected or intended" by the insured, Michigan courts hold that the applicability of the exclusion does not depend on whether the insured person expected or intended injury of the precise nature or severity that eventuated. See, e.g., Freemont Mut. Ins. Co. v. Wieschowski, 182 Mich.App. 121, 451 N.W.2d 523 (1989) (exclusion applies to hip injury sustained in a beating administered by insured, notwithstanding that this particular hip injury may not have been intended); State Farm Fire & Casualty Co. v. Heron, 180 Mich.App. 333, 446 N.W.2d 654 (1989) (exclusion applies where beating victim died, notwithstanding that insured may not have intended the death). We see no reason to doubt that the Michigan courts would apply the same principle in the context of this case. Mr. Holt did not associate his cold sores with the name "herpes," to be sure, and he doubtless failed to foresee the extent of the suffering to which Mrs. Zurek would be subjected if she contracted his disease in her genital area, but Holt admittedly knew that he would be placing Mrs. Zurek at risk if he carried on as usual during periods when his sores were active. He carried on anyway. Having done so, he forfeited coverage just as surely as if, like the insureds in Wieshowski and Heron, he had placed his victim at risk by beating her.
 
 
 22
 Perhaps Mrs. Zurek's strongest argument against the result reached by the district court is a "where do you draw the line" argument. If coverage is excluded for bodily injury that may reasonably be expected to result from intentional or criminal acts of a sexual nature, Mrs. Zurek asks, will coverage also be excluded for bodily injury that might reasonably be expected to result from such intentional or criminal acts as exceeding the speed limit while driving an automobile on an icy highway?[3] Where do we draw the line?
 
 
 23
 The answer may depend more on experience than anything else: when applying state law in the exercise of our diversity jurisdiction, we must draw the line where experience indicates that the Supreme Court of the state would draw the line. And Holmes' suggestion that the life of the law has not been logic is certainly no easier to refute in the diversity context than it is elsewhere.
 
 
 24
 In American Family Life Assurance Co. v. Bilyeu, 921 F.2d 87 (6th Cir.1990), to take a recent example that arose under Kentucky law, an accident policy providing coverage for "accidental death, injury and dismemberment" contained an exclusion not only for "[i]ntentionally self-inflicted wounds," but also for "wounds [sustained] during the commission of a crime." The insured was killed when a car he was driving struck a tree. Subsequent investigation indicated that the insured had been traveling at 55--60 miles per hour in a 35 m.p.h. zone and that his blood alcohol level was far above that at which it is legal to operate an automobile. Following a Kentucky Supreme Court decision that was almost squarely on point, Fryman v. Pilot Life Ins. Co., 704 S.W.2d 205 (Ky.1986), we held that the insured's death was "accidental," within the meaning of the policy, and that death benefits were payable notwithstanding the insurance company's argument that the accident could have been foreseen as a probable result of the insured's crime. In Fryman, as we pointed out, the Kentucky Supreme Court "specifically rejected the applicability of tort-like principles, such as fault and foreseeability, to insurance contract law." 921 F.2d at 89.
 
 
 25
 In the case at bar, on the other hand, notwithstanding the general rule that exclusionary clauses are to be strictly construed against the insurer, see Allstate Ins. Co. v. Green, 831 F.2d 145, 147-48 (6th Cir.1987), we have a Michigan Supreme Court decision--Freeman--specifically accepting the applicability of the principle that bodily injury which may reasonably be expected to result from the intentional or criminal acts of an insured person is not covered by an insurance policy in which the insurer has said, in so many words, "[w]e do not cover any bodily injury ... which may reasonably be expected to result from the intentional or criminal acts of an insured person...." Whatever the Supreme Court of Michigan might do with an automobile liability policy that excluded coverage for such an injury--assuming the pertinent insurance regulations permitted this type of exclusion in an automobile policy--we have seen how the Michigan Supreme Court deals with homeowners policies that contain the precise exclusionary clause at issue here. Where the facts are such that the clause applies, the Michigan court enforces the clause as written. Under the principle of Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938), the federal courts can do no less.
 
 
 26
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 No one, it appears, ever raised the question whether it would be an abuse of discretion for the district court to exercise its power to render a declaratory judgment in this situation. See Allstate Ins. Co. v. Mercier, 913 F.2d 273 (6th Cir.1990). We could remand the case for consideration of that issue by the district court, but on the particular facts presented here it does not seem to us that this would result in a productive use of judicial time and effort
 
 
 [2]
 Although the district court held only that Mr. Holt's acts were "intentional," Allstate contends that they were criminal as well. Mich.Comp.Laws Sec. 750.30 provides that "[a]ny person who shall commit adultery shall be guilty of a felony...." Adultery is defined as "the sexual intercourse of 2 persons, either of whom is married to a third person." Mich.Comp. Laws Sec. 750.29. Mrs. Zurek tells us that her state-court lawsuit against Mr. Holt was dismissed at the trial level on the theory that although she, unlike Mr. Holt, was unmarried at the time she contracted the disease from him, she was no less guilty of adultery than he--and Michigan adheres to "the legal principle that a court will not aid one who founds his cause of action upon an immoral or illegal act...." Zurek v. Holt, file No. 88-2945-NO, Circuit Court for the County of Macomb, Michigan, opinion and order of 10/4/89, quoting Glazier v. Lee, 171 Mich.App. 216, 220, 429 N.W.2d 857, 859 (1988). Mrs. Zurek has appealed the dismissal of her state-court action, and we are told that the appeal is still pending. Regardless of the merits of that appeal, we have no reason to question the proposition that Mr. Holt, at least, was committing a felony when he engaged in the acts by which he transmitted his disease to Mrs. Zurek
 
 
 [3]
 This particular question is purely rhetorical. Allstate's homeowners policies expressly exclude coverage for bodily injury "arising out of the ownership, maintenance, use, loading or unloading of any motorized land vehicle or trailer." See Allstate Ins. Co. v. Mercier, 913 F.2d 273, 275 (6th Cir.1990)